T.C. Memo. 1998-214

UNITED STATES TAX COURT

JOANN THOMPSON, F.K.A. JOANN BATES, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4702-97.                    Filed June 17, 1998.

<u>Charles N. Woodward</u>, for petitioner.

<u>Elizabeth Downs</u>, for respondent.

MEMORANDUM OPINION

POWELL, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7443A(b)(3) and Rules 180, 181, and
182.[1]

Respondent determined a deficiency in petitioner's 1994
Federal income tax and an addition to tax under section 6651(a)

--------

[1]  Unless otherwise indicated, section references are to
the Internal Revenue Code in effect for the year in issue, and
all Rule references are to the Tax Court Rules of Practice and
Procedure.

in the amounts of $4,446 and $126, respectively.  Petitioner

resided in Guthrie, Oklahoma, when she filed her petition in this

case.

The issue is whether $11,100 petitioner received from United

Design Corp. (United) is excludable from gross income under

section 104(a)(2).[2]

Background

The facts may be summarized as follows.  Prior to May 1993,

petitioner worked for the Oklahoma school system.  In May 1993,

she was employed by United and became United's personnel manager

in December of that year.  Petitioner reported to Robert M.

Clinton, vice president of United.  After becoming the personnel

manager conflicts developed between petitioner and other

employees of United.  The controversies centered around

petitioner's veracity concerning certain events at United.  At

Mr. Clinton's suggestion petitioner was referred to The

University of Oklahoma Health Sciences Center for evaluation.

That evaluation found that petitioner did not appear to be

suffering from brain dysfunction or psychopathology.

However, on June 22, 1994, Mr. Clinton wrote to petitioner

that United had

> determined to release you from your at-will employment,
> effective this same date.  The reasons for this decision

---

[2]    Petitioner concedes that, if the $11,100 is includable
in gross income, she is liable for the addition to tax under sec.
6651(a) for failure to timely file her return.

include your inability to effectively manage the central functions of the Personnel Department.  In recognition of your past service to the Company, we have decided to offer you the opportunity to submit a voluntary resignation, in exchange for a severance package, consisting of the following:

        *      *      *      *      *      *      *

        2. **Severance Pay**.  Severance pay in the total amount of $11,100.00.  This payment amounts to twelve (12) weeks of severance pay.

        *      *      *      *      *      *      *

In consideration for the severance package described herein, the Company asks you to (i) execute a voluntary resignation (see attached, and (ii) sign a release and waiver of claims (see attached).  This offer is non-negotiable.

The release provided, inter alia:

        I * * * in consideration of payments to be made to me in the sum of * * * ($11,100.00), in addition to other sufficient and valuable consideration, * * * release, waive and discharge **United Design Corporation** * * * of from any and all claims, actions, causes of actions, damages, costs, expenses and compensation, known or unknown, which I may now have * * * incidental to, or in connection with my employment and/or any cessation thereof.

        * * * I represent that I have no injuries or claims against United Design Corporation other than those being expressly released herein, and which claims are expressly denied by United Design Corporation, and that I intend to release all claims * * * including, but not limited to, the Age Discrimination In Employment Act * * *.

The letter of resignation stated that petitioner was resigning her employment "for reasons purely personal and not connected to * * * [her] employment or working conditions."  Petitioner executed both the release and the letter of resignation.  After her resignation petitioner interviewed with the local school

system and was hired as Superintendent of Schools commencing on August 1, 1994.

Mr. Clinton was of the opinion that United had valid reasons to terminate petitioner's employment. United had a policy of paying severance amounts when an employment was terminated that typically were determined by the weekly salary multiplied by "some number of weeks." It also had a practice of obtaining releases from employees whose employment was terminated. Initially, United's proposed severance payment was for 6 or 8 weeks. After discussions with petitioner, her attorney, Guy Jackson (Mr. Jackson), and United's in-house counsel, the weekly component of the severance pay was increased to 12 weeks. In deciding the amount of severance pay, Mr. Clinton specifically did not intend to compensate petitioner for any personal injury. Petitioner did not state to Mr. Clinton any claims she felt she may have had. He never heard that there was a claim for personal injury from "psychological, mental and emotional distress".

At the outset of her difficulties at United, petitioner had contacted Mr. Jackson. Mr. Jackson considered possible tort claims of unjust dismissal and wrongful discharge and claims based on negligent infliction of emotional distress. He also would have considered an age discrimination claim. Mr. Jackson had discussions with United's in-house counsel concerning petitioner's potential claims. The release was drafted by United, and United did not want the tort claims of unjust

discharge, wrongful termination, and emotional distress specified in the release.

United, at petitioner's request, did not include the $11,100 on the Form W-2 issued to petitioner for 1994. Rather, United issued a Form 1099-MISC for the payment. On her 1994 Federal income tax return, petitioner revealed the $11,100, but took the position that the payment was excluded from gross income under section 104(a)(2). Respondent determined that the payment was not excludable.

## Discussion

Section 61(a) defines gross income broadly as "all income from whatever source derived". The Supreme Court "has given a liberal construction to this broad phraseology in recognition of the intention of Congress to tax all gains except those specifically exempted." Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 430 (1955). Exclusions from income are matters of legislative grace and are construed narrowly. Commissioner v. Schleier, 515 U.S. 323, 328 (1995); Mostowy v. United States, 966 F.2d 668, 671 (Fed. Cir. 1992). A taxpayer seeking a deduction or exclusion "must be able to point to an applicable statute and show that he comes within its terms." New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); see also Commissioner v. Schleier, supra.

Section 104(a)(2) excludes from gross income "the amount of any damages received (whether by suit or agreement and whether as

lump sums or as periodic payments) on account of personal injuries or sickness".  "The term 'damages received (whether by suit or agreement)' means an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." Sec. 1.104-1(c), Income Tax Regs.  There are two separate requirements that petitioner must satisfy under section 104(a)(2):  (1) "the underlying cause of action giving rise to the recovery is 'based upon tort or tort type rights'" and (2) "the damages were received 'on account of personal injuries or sickness.'"  Commissioner v. Schleier, supra at 337.

For purposes here, we are willing to assume that under the applicable Oklahoma law, petitioner may have had some claim against United in the nature of a tort or tort type cause of action.  See Barnes v. Commissioner, T.C. Memo. 1997-25.  The more difficult question, however, is whether the $11,100 was received on account of a tort or tort type cause of action.  The question is for what was the amount paid.  Bagley v. Commissioner, 105 T.C. 396, 406 (1995), affd. 121 F.3d 393 (8th Cir. 1997).  We are primarily concerned with United's intent in making the payment.  Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), affg. T.C. Memo. 1964-33.  While there was not a comprehensive settlement agreement, the agreement reflected in the correspondence between petitioner and United indicated that

United considered that the amount was paid as severance pay. Petitioner's letter of resignation states that she resigned for personal reasons that were not connected with her employment. The only mention of petitioner's claims against United is in the release which releases United from "any and all claims, actions, causes of actions, damages, costs, expenses and compensation" including claims under the Age Discrimination in Employment Act of 1967 (ADEA), Pub. L. 90-202, 81 Stat. 602. Included in the release are claims that do not fall within the ambit of section 104(a)(2). See, e.g., Commissioner v. Schleier, supra (ADEA); Knuckles v. Commissioner, supra (compensation). Furthermore, Mr. Clinton was unaware of any specific tort claims that may have been raised against United. We recognize that any involuntary employment termination may involve mental anguish that may be classified as a tort damage. On the other hand, there is no indication here that the $11,100 was paid to compensate petitioner for that type of damage. Therefore, the $11,100 severance payment is not excludable from gross income under section 104(a)(2).

To reflect the foregoing,

Decision will be entered for respondent.